The relief described hereinbelow is SO ORDERED.

Signed October 09, 2007.



_____
ROBERT D. BERGER
United States Bankruptcy Judge

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

In Re:

**VINCENT LEON FRIES and**          **Case No. 03-22894**
**REGINA SUE FRIES,**          **Chapter 13**
              **Debtors.**

_____

**TRAVELERS CASUALTY & SURETY COMPANY,**
            **Plaintiff,**

**v.**          **Adv. No. 06-06209**

**H. KENT DESSELLE, et al.**
            **Defendants.**

## MEMORANDUM OPINION AND ORDER

This declaratory judgment action is before the Court on Plaintiff's motion for summary

judgment[1] and Defendants H. Kent Desselle's and Check Electric Construction Company, Inc.'s

_____

[1] Doc. No. 32.

motion to dismiss.[2]  The Court has jurisdiction under 28 U.S.C. §§ 157 and 1334 over issues

regarding Debtors' Chapter 13 plan obligation to assign a lawsuit to Plaintiff Travelers Casualty

& Surety Company ("Travelers")  free and clear of liens.  The motion for summary judgment is

granted.   The motion to dismiss is denied, in part.  This opinion constitutes the findings of fact

and conclusions of law pursuant to Fed. R. Bankr. P. 7052 and 7056.

## I.    Findings of Fact

### A.    Standards for a Properly Opposed Motion for Summary Judgment

Travelers' Memorandum of Law in Support of Summary Judgment[3] sets forth a statement

of material facts to which it contends no genuine issues exist.  Defendants Desselle's and Check

Electric's response[4] does not specifically controvert most of these facts. Of Plaintiff's 41

numbered paragraphs, Defendants controvert only three with a cite to an affidavit - or any part of

the record.  Defendants respond to most paragraphs stating they are "without knowledge."

Defendants' vague responses do not cite admissible evidence to support their denials or to

explain how a genuine controversy exists.  Defendants do not request more time to conduct

discovery.  While Defendants' responses are allowed in the pleading stage, the responses are

insufficient to defeat a properly supported summary judgment motion.   "All material facts set

forth in the statement of the movant shall be deemed admitted for the purpose of summary

judgment unless specifically controverted by the statement of the opposing party."[5]  The Court,

---

[2]  Doc. No. 29.

[3]  Doc. No. 33.

[4]  Doc. No. 38.

[5]  D. Kan. LBR 7056.1(a).

07.10.09 Fries Travelers.wpd

upon its own review of the record and in light of the foregoing, finds the following facts are material and uncontroverted.

**B.     Uncontroverted Facts**

Debtors, as individuals, filed their petition for Chapter 13 relief on July 14, 2003. Debtors operated a construction company called Vina Construction Company, Inc. ("Vina"). Debtor Regina Fries is the president. Debtor Vincent Fries provided consulting services to Vina. Travelers is Vina's surety and issued performance and payment bonds on behalf of Vina. Debtors agreed personally to indemnify Travelers for any losses under the bonds. Vina was the general contractor on a project for the City of Kansas City, Missouri, Department of Parks and Recreation (the "City"), known as the Westside Community Center (the "Westside Project"). Defendant Check Electric was a subcontractor to Vina on the Westside Project. Vina encountered problems on the Westside Project and, as a result, Travelers paid Vina's suppliers and subcontractors under the bonds. As of July 13, 2003, Travelers had paid $341,277.00.

Prepetition, on September 19, 2002, Travelers, Vina, and Debtors entered into a settlement agreement which, among other things, attempted to resolve Debtors' indemnity obligations to Travelers. As part of the settlement, Vina assigned to Travelers a collateral security interest in Vina's claim against the City for actions by the City relating to the Westside Project (the "Westside Claim"). Travelers agreed to forbear from pursuing Debtors personally until the Westside Claim was resolved.

At about the same time, Travelers, Vina, and Check Electric entered into a settlement agreement in which Check Electric accepted $60,000.00 and a percentage of any recovery on the Westside Claim to resolve Check Electric's entire claim against Vina and Travelers. As part of

effectuating these settlements, the parties engaged Desselle to pursue the Westside Claim against

the City. The parties engaged Desselle on a contingency basis pursuant to a September 19, 2002,

engagement letter. The contingency for payment in Desselle's employment contract stated:

> The client(s) agrees to pay to the attorney thirty five per cent (35%) of any
> amount recovered by settlement prior to the filing of any suit. If suit is filed,
> client(s) agrees to pay to the attorney forty per cent (40%) of any amount
> recovered after the filing of said suit.

The engagement letter also anticipated a counterclaim from the City. The engagement letter

addressed Desselle's services and compensation relating to a counterclaim as follows:

> The attorney agrees to provide defense representation for VINA in the event that
> the City or any other party (except Travelers) files a claim or counterclaim against
> VINA in the lawsuit against the City, and these defense services will be
> compensated out of the contingent fee arrangement described earlier in this letter.

Desselle did not file suit against the City until October, 2005, approximately three years

after he had been retained. In the meantime, the City began asserting damages against Vina and

against Travelers on the performance bonds in excess of $1.5 million relating to Vina's

construction of the Westside Project. The record does not disclose an anticipated value for the

Westside Claim; however, the parties seem to be operating under an understanding that the

City's claims exceed the Westside Claim. After three years, Travelers no longer wanted

Desselle to file suit against the City because Travelers was in the process of negotiating with the

City regarding the Westside Claim and the City's counterclaim and thought it was making

progress. Desselle was not involved in the negotiations and did not know Travelers and the City

were in direct negotiations. Travelers' and the City's negotiations ground to a halt after Desselle

filed the lawsuit without Travelers' permission. Frustrated with what it perceived as Desselle's

interference in its negotiations with the City, Travelers negotiated another settlement with

Debtors in which Debtors would cause Vina to assign absolutely its interest in the Westside Claim to Travelers.  Travelers wanted complete control over the Westside Claim so it could have unbridled authority to reach a global settlement with the City.  Travelers and Debtors incorporated the settlement into the order confirming Debtors' Chapter 13 Plan.  The June 5, 2006, Order required Debtors to cause Vina to assign its interest in the Westside Claim to Travelers  "free and clear of any and all claims or interests, including, but not limited to, any attorney liens...."[6]  Debtors served Desselle with a copy of the June 5 Order and provided him with an opportunity to object.  Desselle did not object to the June 5 Order.  Vina terminated Desselle's representation on May 25, 2006, and delivered an assignment of the Westside Claim to Travelers.  Travelers did not want Desselle handling the lawsuit because, according to Travelers, Desselle had done nothing to pursue the Westside Claim in the intervening three years.

Nonetheless, Desselle maintains he has an attorney's lien on the Westside Claim.  Pursuant to his contingency contract, Desselle claims  40 percent of any amount recovered from the City or 40 percent of any affirmative offset by which the City may agree to reduce its claim against Vina and Travelers.  On September 20, 2006, Desselle sent a letter to the City, Vina, and Travelers asserting the attorney's lien against the Westside Claim.  After Desselle's letter, negotiations between Travelers and the City, which had resumed, ground to a halt again.  Travelers and the City have not settled or otherwise resolved their claims and counterclaims.  Neither Travelers nor Vina have recovered any amount from the City.  The City has not agreed to any amount for a setoff.   Travelers maintains Desselle's claim to an attorney's lien is

---

[6]  Doc. No. 33, Exhibit F.

undermining Travelers' attempts to resolve its issues with the City, which was Travelers' primary motivation for entering the second settlement with Debtors. Desselle maintains he is the victim of a conspiracy to deprive him of a potential contingency fee.

### C.    Summary of Dispute

The issue is whether Desselle has an attorney's lien on the Westside Claim. Debtors promised Travelers in their Chapter 13 plan to cause Vina to assign the Westside Claim to Travelers free and clear of any liens. The parties do not argue Vina attempted to address Desselle's alleged lien before assigning the Westside Claim to Travelers. Apparently, Vina and Debtors did not think Desselle was owed any compensation and, thus, did not consider a potential attorney's lien attaching to the Westside Claim when they delivered the assignment to Travelers. Only after Vina assigned the Westside Claim and terminated Desselle did Desselle seek to enforce a lien. Travelers maintains Debtors breached their Chapter 13 plan by failing to cause Vina to assign the Westside Claim free and clear of Desselle's claim to an attorney's lien. Travelers also maintains Desselle has no attorney's lien because he was terminated from a contingency agreement prior to the contingency's occurrence and did not earn any compensation to support a lien. Travelers portrays Desselle as an eleventh hour spoiler attempting to take a fee for little or no work. Desselle portrays himself as a victim squeezed out of his compensation. Check Electric is scarcely mentioned. At one point, Check Electric had an interest in the outcome of the Westside Claim; however, no party, including Check Electric, asserts Check Electric has a lien against the Westside Claim. Thus, whether Debtors successfully completed their Chapter 13 plan or whether they breached it as to Travelers depends on whether Desselle has an attorney's lien against the Westside Claim.

## II. Conclusions of Law

### A. Personal Jurisdiction

Defendants Desselle and Check Electric move to dismiss the adversary for lack of personal jurisdiction. Personal jurisdiction in bankruptcy is governed by Fed. R. Bankr. P. 7004(f) which provides for jurisdiction over the person of any defendant in a civil proceeding arising in or related to a case under the Code. The general personal jurisdiction limits over non-resident defendants do not apply where nationwide service of process is authorized.[7] Fed. R. Bankr. P. 7004(d) authorizes nationwide service of process in bankruptcy. Thus, minimum contacts analysis is unnecessary. The Court need not look for Defendants' minimum contacts with the forum state of Kansas. The forum in bankruptcy cases is the United States.[8]

To defeat personal jurisdiction, Defendants must show that litigating in this Court would be "so gravely difficult and inconvenient that [they] unfairly [are] at a severe disadvantage in comparison to [their] opponent."[9] The burden is great, and only the highly unusual case will show inconvenience rising to a level of constitutional concern.[10] "There is nothing inherently burdensome about crossing a state line."[11] In this case, Defendants have failed to meet their burden. Defendants' only inconvenience is having to retain counsel licensed to appear in this Court. Having to retain counsel is not unfair. Thus, the Court finds it has personal jurisdiction

---

[7] *Peay v. Bellsouth Medical Assistance Plan*, 205 F.3d 1206, 1212 (10th Cir. 2000).

[8] *In re AstroPower Liquidating Trust,* 335 B.R. 309, 317 (Bankr. D. Del. 2005).

[9] *Peay*, 205 F.3d at 1212, *citing Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478 (1985).

[10] *In re Gentry Steel Fabrication, Inc.,* 325 B.R. 311, 317 (Bankr. M.D. Ala. 2005).

[11] *Id.*

07.10.09 Fries Travelers.wpd

over Defendants if it has subject matter jurisdiction.

**B.    Subject Matter Jurisdiction**

Defendants do not challenge the Court's subject matter jurisdiction; however, jurisdiction is a prerequisite to any judicial action, regardless whether the parties raise the issue.[12]  Travelers contends its claims against Desselle and Debtors concern the administration of the Estate because a judgment in its favor could result in the successful completion of Debtors' Chapter 13 plan.  Judgment against Travelers could mean a material default in the plan.  The effect to the Estate will be either discharge and closure or conversion to a Chapter 7.   Further, Travelers contends its claim against the Estate will rise dramatically if Debtors breached their Chapter 13 plan.  Defendants do not address these issues.

The Court finds it has jurisdiction over the crux of the declaratory judgment action, which is whether Debtors caused Vina to assign the Westside Claim free of Desselle's alleged attorney's lien.  Whether Debtors breached their Chapter 13 plan because the Westside Claim is possibly encumbered by an attorney's lien  affects the case, just as Travelers asserts.

However, Travelers' prayer for relief goes far beyond this issue and seeks declarations regarding Travelers' and Desselle's actions with respect to one another.  The complete request for summary judgment is as follows:

Travelers requests that the Court enter a judgment finding and ordering that:

(a)    Desselle's engagement on the Westside Claim has been properly terminated.

(b)    Desselle's compensation in connection with the Westside Claim will be due if and only if there is a net recovery obtained on the Westside Claim.

---

[12] *In re Lang*, 414 F.3d 1191, 1195 (10th Cir. 2005).

(c)     Desselle's compensation for work on the Westside Claim, if any, will be based on the reasonable value of his services.

(d)     Desselle acted in violation of his duties by filing a petition against the City on the Westside Claim against the express instruction of Travelers.

(e)     The reasonable value of Desselle's services in connection with the Westside Claim is zero.

(f)     Desselle has not assisted in any way with Travelers' negotiations with the City to resolve the Westside Claim.

(g)     Desselle's attorney's lien, if any, applies solely to any net amount recovered by Travelers on the Westside Claim, with "recovered" meaning funds actually received by Travelers.

(h)      If Travelers successfully negotiates an offset of liability to the City on the Bonds through setoff or release of the Westside Claim, but the result of the offset is that Travelers receives no net recovery from the City (that is, Travelers must pay the City on the City's claim under the Bonds even after credit to Travelers for the Westside Claim), then the contingency specified under Desselle's engagement has not occurred and Desselle will not be entitled to any payment for his services on the Westside Claim, including any contingency fee calculated as a percentage of any offset value for the Westside Claim established at trial or agreed to by the City.

(i)     Travelers has breached no duty, fiduciary or otherwise, to Desselle.

(h)*[13]     Travelers has breached no duty, fiduciary or otherwise, to Check Electric.

(j)     Travelers has not breached any contract with Desselle or Check Electric relating to the Westside Claim or the Westside Project.

(k)     Neither Travelers nor any other party has engaged in any civil conspiracy against Desselle or Check Electric with respect to the Westside Claim or any agreement relating to the Westside Project.

(l)     Travelers has not engaged in any act that would support a claim for punitive damages by Desselle or Check Electric against Travelers or any other party.

(m)     Travelers has not engaged in any act that would support a claim against Travelers

_____

[13]  (sic).

07.10.09 Fries Travelers.wpd

or any other party for toritous interference with any contract to which Desselle or Check Electric is a party or a beneficiary.

(n)     Whether the Debtors are in material default of their Chapter 13 plan on account of not assigning the Westside Claim "free and clear of any and all claims or interests, including, but not limited to, any attorney liens."

Travelers has failed to show how allegations solely between itself and Desselle (subparagraphs (i) through (m) (including the second subparagraph(h)*)) will have any impact on the Estate. Whether Travelers, Vina, Desselle, and Check Electric injured one another or have causes of action against one another is too removed from the Debtors' individual bankruptcy to bestow jurisdiction. The Court does not have subject matter jurisdiction over claims in either contract or tort between Travelers, Vina, Desselle, and Check Electric. Although any loss associated with the Westside Project suffered by Travelers could be conceivably swept under the umbrella indemnity agreement between Travelers and Debtors, if Travelers, itself, breached a contract or committed a tort, such losses of its own making could not be passed on to the Debtors and affect the Estate.[14]

The Court further questions whether Travelers' preemptive declaratory judgment action with respect to Desselle's claims provides a basis for jurisdiction under 28 U.S.C. §2201. Declaratory judgment actions are not meant to give a potential defendant a declaration of non-liability before the "natural plaintiff" brings his claims.[15] The Court draws no conclusions from Desselle's allegations regarding breaches of contract, breaches of duty, civil conspiracy, tortious

---

[14]   Since the Court finds it lacks jurisdiction over these claims, the parties are cautioned the Court does not determine these claims have merit.

[15]   *See AmSouth Bank v. Dale,* 386 F.3d 763, 786 (6th Cir. 2004).

07.10.09 Fries Travelers.wpd

interference, or actions supporting a claim for punitive damages. The record before this Court does not develop these allegations apart from Travelers' attempt to defend itself from Desselle's September 20, 2006, letter.[16] The Court need not analyze jurisdiction under 28 U.S.C. §2201 because regardless whether Desselle's allegations address past actions or the parties' legal relationship going forward, the claims will have no effect on the Estate.

Accordingly, the Court finds it has jurisdiction over the issues relevant to Desselle's alleged lien. Those issues include the following prayers for relief:

(a)     Desselle's engagement on the Westside Claim has been properly terminated.

(b)     Desselle's compensation in connection with the Westside Claim will be due if and only if there is a net recovery obtained on the Westside Claim.

(c)     Desselle's compensation for work on the Westside Claim, if any, will be based on the reasonable value of his services.

(d)     Desselle acted in violation of his duties by filing a petition against the City on the Westside Claim against the express instruction of Travelers.

(e)     The reasonable value of Desselle's services in connection with the Westside Claim is zero.

(f)     Desselle has not assisted in any way with Travelers' negotiations with the City to resolve the Westside Claim.

(g)     Desselle's attorney's lien, if any, applies solely to any net amount recovered by Travelers on the Westside Claim, with "recovered" meaning funds actually received by Travelers.

(h)     If Travelers successfully negotiates an offset of liability to the City on the Bonds through setoff or release of the Westside Claim, but the result of the offset is that

---

[16] Although Desselle does not controvert he made the allegations, he objects to the letter's admissibility as a settlement communication. He has not raised the allegations as a counterclaim or elsewhere. Travelers includes the letter to demonstrate a justiciable controversy; however, Fed. R. Evid. 408 prohibits the Court from considering settlement evidence offered to prove the invalidity of a claim. *See, e.g., Clevenger v. Bolingbrook Chevrolet, Inc.,* 401 F. Supp. 2d 878, 881 (N.D. Ill. 2005).

Travelers receives no net recovery from the City (that is, Travelers must pay the City on the City's claim under the Bonds even after credit to Travelers for the Westside Claim), then the contingency specified under Desselle's engagement has not occurred and Desselle will not be entitled to any payment for his services on the Westside Claim, including any contingency fee calculated as a percentage of any offset value for the Westside Claim established at trial or agreed to by the City.

(n)     Whether the Debtors are in material default of their Chapter 13 plan on account of not assigning the Westside Claim "free and clear of any and all claims or interests, including, but not limited to, any attorney liens."

The Court finds it does <u>not</u> have jurisdiction with respect to the following prayers for relief:

(i)     Travelers has breached no duty, fiduciary or otherwise, to Desselle.

(h)*    Travelers has breached no duty, fiduciary or otherwise, to Check Electric.

(j)     Travelers has not breached any contract with Desselle or Check Electric relating to the Westside Claim or the Westside Project.

(k)     Neither Travelers nor any other party has engaged in any civil conspiracy against Desselle or Check Electric with respect to the Westside Claim or any agreement relating to the Westside Project.

(l)     Travelers has not engaged in any act that would support a claim for punitive damages by Desselle or Check Electric against Travelers or any other party.

(m)     Travelers has not engaged in any act that would support a claim against Travelers or any other party for toritous interference with any contract to which Desselle or Check Electric is a party or a beneficiary.

Prayers for relief (i), (h)*, and (j)-(m) are dismissed without prejudice for lack of subject matter jurisdiction. The Court grants summary judgment on prayers for relief (a) - (h) and (n) as follows.

### C.     Summary Judgment Standard

Federal Rule of Civil Procedure 56 governs summary judgment and is made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) makes summary judgment appropriate when, after consideration of the record, the court determines "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[17] To determine whether any genuine issues of material fact exists, a court must construe the record liberally in favor of the party opposing the summary judgment.[18] An issue is "genuine" if sufficient evidence exists on each side "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim."[19] The moving party has the burden to establish it is entitled to summary judgment.[20]

### D.     The creation and attachment of attorney's liens under Missouri law

The parties do not dispute Missouri law controls. An attorney's lien arises by statute and attaches from the commencement of an action to any verdict, report, decision or judgment entered in the client's favor and follows the proceeds thereof.[21] The lien is not affected by settlement either before or after judgment.[22] The lien is not necessarily released when the

---

[17] FED. R. CIV. P. 56(c).

[18] *McKibben v. Chubb*, 840 F.2d 1525, 1528 (10th Cir. 1988) (citation omitted).

[19] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[20] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[21] R.S. Mo. §484.130.

[22] *Id.*

- 13 -

attorney is discharged prior to judgment or settlement.[23]  If the attorney abandons the client or commits a serious violation of duty to the client so as to destroy the attorney-client relationship, then the attorney forfeits his right to compensation and the right to a lien.[24]  If the client's cause of action fails to result in actual recovery for the client, then the attorney's lien fails to materialize because the attorney's lien can only attach to a fund or corpus generated for the client.[25]  There can be no lien on a lost cause.  Similarly, a defendant's right of setoff arising from the same transaction has priority over any attorney's lien and can likewise defeat an attorney's lien if there is no balance owed to the client.[26]  In other words, if Client A wins a judgment against Defendant B, but B wins a counterclaim against A in a related matter, "then the claims of A and B will be offset, and the attorney's lien will attach only to the net amount following the set-off."[27]  The attorney's lien can only attach to the clear balance due his client after all claims between the parties are setoff.

> **E.     The measure of recovery for the discharged attorney under a contingency fee contract terminated before the occurrence of the contingency is based in *quantum meruit*.**

     If the attorney is discharged prior to judgment or settlement under a contingency fee

---

[23]  *Plaza Shoe Store, Inc. v. Hermel, Inc.,* 636 S.W.2d 53, 60 (Mo. Banc 1982).

[24]  *International Materials Corp. v. Sun Corp., Inc.,* 824 S.W.2d 890, 895 (Mo. Banc 1992).

[25]  *See, e.g., Goldstein and Price, L.C. v. Tonkin & Mondl, L.C.,* 974 S.W.2d 543, 548-49 (Mo. Ct. App. 1998); *Reed v. Reed*, 10 S.W.3d 173, 181 (Mo. Ct. App. 1999).

[26]  *State ex rel. Hinde v. United States Fidelity & Guaranty Co.,* 115 S.W. 1081, 1082 (Mo. Ct. App. 1909); *Benton v. Alcazar Hotel Co.,* 194 S.W.2d 20, 25 (Mo. 1946); *Reed v. Reed*, 10 S.W.3d at 178-79; *see also Hillside Enterprises, Inc. v. Continental Carlisle*, 147 F.3d 732, 735 n.4 (8th Cir. 1998) (noting that under Missouri law, an attorney's lien is junior to the right of an opponent to setoff its award where the claims arose in the same transaction).

[27]  *Reed*, 10 S.W.3d at 178.

07.10.09 Fries Travelers.wpd

contract, he is limited to *quantum meruit* recovery, not to exceed the contracted amount, and payable only upon the occurrence of the contingency.[28]  An attorney may not recover under a contingency contract if he fails to fulfill the terms of the contingency before being terminated.[29] The appropriate fee for an attorney terminated prior to conclusion of a contingency fee contract is measured in *quantum meruit*.  Further, under a terminated contingency fee contract, the client must recover on his cause of action before the discharged attorney may collect fees, even for recovery under *quantum meruit*.  In *Plaza Shoe*, the Missouri Supreme Court grappled with whether a client's recovery would be a prerequisite for the collection of attorney's fees and found it was.  *Plaza Shoe* considered the New York approach, which allowed the terminated attorney's right to *quantum meruit* recovery to accrue immediately upon discharge, but the court expressly rejected it because of the "'chilling effect' on a client exercising his admitted right to discharge an attorney, because he might be liable for fees to the original attorney even though he made no recovery whatever on his claim."[30]  Instead, *Plaza Shoe* adopted the California rule which holds the discharged attorney's cause of action for fees accrues only upon the occurrence of the contingency.[31]  In other words, if the client does not recover on his claim, his original lawyer is not entitled to compensation.  *Plaza Shoe* acknowledged the adopted rule did not comport with traditional contract law in that one who disaffirms a contract may not selectively enforce its provisions.  However, given the uniqueness of the attorney-client relationship, and the

---

[28]  *Plaza Shoe Store,* 636 S.W.2d at 59-60.

[29]  *Id.* at 58-60; *International Materials Corp.,* 824 S.W.2d at 895.

[30]  *Plaza Shoe Store,* 636 S.W.2d at 59.

[31]  *Id.*

- 15 -

paramount public policy that a client's power to discharge his attorney should not be prohibitively costly, *Plaza Shoe* announced the rule limiting the discharged attorney's recovery to the reasonable value of his services, not to exceed the contracted fee, and payable only upon the occurrence of the contingency.[32]

As in all cases involving *quantum meruit* recovery, the services must have enriched the client in the sense of benefits conferred.[33]  Recovery may be zero if the attorney provided no actual value to the client.[34]  The value of legal services for a *quantum meruit* claim cannot be measured against an unliquidated recovery.[35]  Rather, recovery is based on the reasonable value of services performed.  The factors to be considered are time, nature, character and amount of services rendered, nature and importance of the litigation, degree of responsibility imposed on or incurred by the attorney, the amount of money or property involved, the degree of professional ability, skill and experience called for and used, and the result achieved.[36]  If the attorney is entitled to *quantum meruit* recovery, he is entitled to a lien provided there is a fund to which the lien may attach.

### F. Travelers prevails because Desselle does not have a lien against the Westside Claim.

Debtors caused Vina to assign the Westside Claim to Travelers; however, Debtors did not

---

[32]  *Id.* at 60.

[33]  *International Materials,* 824 S.W.2d at 895.

[34]  *Id.*

[35]  *Reid v. Reid*, 906 S.W.2d 740, 743 (Mo. Ct. App. 1995).

[36]  *Id.*

07.10.09 Fries Travelers.wpd

take any action to release or satisfy any potential attorney's lien prior to the transfer. Desselle filed the lawsuit in October, 2005, thus, providing notice of his lien under Missouri's statute. Accordingly, the only way Debtors can complete their Chapter 13 plan is if Desselle cannot possibly have a lien against the Westside Claim. Desselle's lien could fail if (1) Desselle forfeited his right to compensation and a lien by violating a duty to his client; (2) the reasonable value of Desselle's services is zero; and (3) the Westside Claim will never result in a balance due to either Vina or Travelers to which an attorney's lien could attach.

           **1.**       **Desselle forfeited his right to compensation by filing the lawsuit against the express instructions of his former client.**

Travelers requests a declaration that Desselle filed a petition against the City on the Westside Claim against the express instructions of Travelers (subparagraph (d)). Travelers introduced uncontroverted evidence establishing this fact. Travelers cites the affidavit of Sherrie Monteiro, a senior claim executive with Travelers, stating Travelers instructed Desselle not to file suit.[37] In another exhibit, Travelers' attorney states he personally instructed Desselle, on behalf of Travelers, not to file suit.[38] In response, Desselle submits his own affidavit stating, "No Travelers employee advised Desselle not to file suit."[39] Desselle's statement does not controvert the fact that a Travelers' lawyer, on behalf of Travelers with its knowledge and direction, instructed Desselle not to file suit. Desselle attempts to create an illusion of a controversy with a carefully worded affidavit. However, construing the record most favorably

---

[37] *See* Doc. No. 33, Exhibit A, ¶¶ 5 and 11.

[38] *See* Doc. No. 33, Exhibit I.

[39] *See* Doc. No. 38.

for Desselle, the Court cannot discern a genuine fact issue. Desselle filed suit after Travelers'

lawyer instructed him not to file. Desselle's actions shows he filed suit to preserve a potential

attorney's lien rather than to promote his client's interests. By doing so, Desselle forfeited his

right to compensation and an attorney's lien. Summary judgment as to subparagraph (d) is

granted.

> **2.     The reasonable value of Desselle's services is zero, and Desselle has
> not assisted Travelers in resolving the Westside Claim.**

Closely related to the previous issue is whether Desselle provided any services which

enriched his clients in the sense of benefits conferred. Travelers requests a declaration that the

reasonable value of Desselle's services is zero (subparagraph (e)), and Desselle has not assisted

in any way with Travelers' negotiations with the City (subparagraph (f)). Monteiro avers that

Desselle refused to provide any type of accounting for his services or otherwise provide

Travelers with a basis for compensation even after several requests. In response, Desselle does

not offer any evidence describing services he rendered. Thus, Travelers' evidence is the only

evidence on the issue of Desselle's services and their value, and the evidence is Desselle

provided no services that conferred any value to his former clients. In fact, Desselle's

involvement hampered his clients' efforts to resolve their claims. Desselle's failure to assist

with Travelers' negotiations with the City to resolve the Westside Claim is also undisputed.

Monteiro avers Desselle has played no part in Travelers' negotiations with the City, other than

interfering with them. In response, Defendants deny Monteiro's testimony and cite generally to

Desselle's affidavit to controvert Monteiro's statement. However, the entire Desselle affidavit

makes only one reference to talks between the City and Travelers. Desselle avers, "On multiple

occasions the undersigned requested authority from Travelers to file suit against the City of Kansas City and at no time did Travelers indicate they were in direct negotiations with the City." Desselle's testimony does not show a controverted fact. Desselle's own testimony is that he was not aware of the negotiations. Defendants have failed to demonstrate a genuine issue. Travelers' uncontroverted evidence establishes that Desselle did not assist with negotiations with the City, and in fact, Desselle actively interfered by filing suit and threatening the City. The undisputed record establishes Desselle conferred no benefit to his clients. Desselle does not have a lien because the value of his services is zero. Accordingly, summary judgment as to subparagraphs (e) and (f) is granted.

### 3. The Westside Claim is not encumbered with a lien in favor of Desselle.

Travelers requests the Court to declare whether Debtors are in material default of their Chapter 13 plan on account of not assigning the Westside Claim "free and clear of any and all claims or interests, including, but not limited to, any attorney liens" (subparagraph (n)). Desselle is the only party asserting a lien against the Westside Claim, and his claim fails. Desselle did not confer any benefit to his clients. Three years after he was retained, Desselle interfered with his clients' efforts to resolve the Westside Claim and the City's counterclaims by filing an unwanted lawsuit. Desselle was ultimately terminated. Neither Vina nor Travelers have recovered on the Westside Claim, nor do they expect to recover. The Debtors provided Desselle with notice and an opportunity to object to their agreement to cause Vina to assign the Westside Claim free and clear of any and all claims or interests, including, but not limited to, any attorney's liens.[40]

---

[40] The Court takes judicial notice of the main case, *In re Fries*, Case No. 03-22894, Doc. No. 189.

- 19 -

Instead of objecting, Desselle interjected himself directly into Travelers' and the City's negotiations, causing more interference. Based on the foregoing findings of fact and conclusions of law, Desselle has no lien against the Westside Claim. Accordingly, summary judgment as to subparagraph (n) is granted.

**G.    Travelers is entitled to summary judgment declaring the parties' rights related to the Westside Claim.**

Even in the absence of the declarations that Desselle does not have a lien, Desselle would not have a lien if net recovery on the Westside Claim is zero. The contingency for payment in Desselle's employment contract stated:

> The client(s) agrees to pay to the attorney thirty five per cent (35%) of any amount recovered by settlement prior to the filing of any suit. If suit is filed, client(s) agrees to pay to the attorney forty per cent (40%) of any amount recovered after the filing of said suit.

and

> The attorney agrees to provide defense representation for VINA in the event that the City or any other party (except Travelers) files a claim or counterclaim against VINA in the lawsuit against the City, and these defense services will be compensated out of the contingent fee arrangement described earlier in this letter.

Compensation for both Desselle's services for pursuing the Westside Claim and defending any counterclaims was due and payable only upon recovery on the Westside Claim. The contingency in this case has not occurred. Neither Vina nor Travelers has recovered any amount by settlement or otherwise.

The parties disagree over whether the measure of Desselle's compensation would be by percentage under the contingency agreement or by *quantum meruit*. Desselle could not recover under his engagement letter because he failed to fulfill the terms of the contingency fee contract

before being terminated.[41]  Desselle has previously conceded the appropriate fee for an attorney terminated prior to conclusion of a contingency fee contract is measured in *quantum meruit.*[42] However, Desselle argues that once terminated, the client's actual recovery on his cause of action becomes irrelevant to the collection of attorney's fees.  Under *Plaza Shoe,* Desselle is mistaken.  The client's actual recovery is required before attorney's fees may be collected under *quantum meruit*.

Another contentious point between the parties is whether Desselle would have been entitled to compensation and an attorney's lien based on any value realized by the Westside Claim.  In his response to summary judgment,  Desselle argues he is entitled to compensation and a lien based on any offset resulting from the Westside Claim.[43]  Desselle's theory is that even if the City's claims against Vina are found to exceed the Westside Claim, he is entitled to a percentage of whatever amount the Westside Claim is valued in a setoff with the City.  For example, if the City's $1.5 million claim is setoff by a Westside Claim valued at $500,000, resulting in $1 million still owed to the City, then Desselle argues he may be awarded fees based on the $500,000 value assessed to the Westside Claim even though his former client makes no recovery.  Under *Hinde* and subsequent cases, Desselle would have been entitled to an attorney's lien only if the Westside Claim exceeded the City's claims, resulting in money actually collected

---

[41] *Plaza Shoe Store,* 636 S.W.2d at 58-60; *International Materials Corp,* 824 S.W.2d at 895.

[42] Doc. No. 30.

[43] Doc. No. 38 at p. 6.

07.10.09 Fries Travelers.wpd

from the City.[44]  An attorney's lien cannot attach to a reduction of the client's debt, only the

client's recovery.  Further, Desselle would have been entitled to compensation only upon the

occurrence of the contingency.[45]   In his case, the contingency was "any amount recovered" after

filing suit.  Desselle's services for both pursuing the Westside Claim and defending against any

counterclaim would have been compensable only upon the occurrence of an actual recovery by

his former clients.

The remaining issue,  Desselle's termination, is not in dispute.  A client has the absolute

right to terminate his attorney with or without cause.[46]  Defendants do not controvert Desselle's

engagement has been properly terminated.[47]

Accordingly, based upon the foregoing findings of fact and conclusions of law, the Court

enters summary judgment on subparagraph (a) and finds Desselle's engagement on the Westside

Claim has been properly terminated.

The Court further enters summary judgment on subparagraph (b) and finds Desselle's

compensation in connection with the Westside Claim would have been due only if there was a

net recovery obtained on the Westside Claim.

The Court further enters summary judgment on subparagraph (c) and finds Desselle's

compensation for work on the Westside Claim is based on the reasonable value of his services

---

[44]   *Hinde,* 115 S.W. at 1082; *Benton,* 194 S.W.2d at 25; *Reed,* 10 S.W.3d at 178-79; *Hillside Enterprises,* 147 F.3d at 735 n.4; *Goldstein and Price, L.C. v. Tonkin & Mondl, L.C.,* 974 S.W.2d 543, 548-49 (Mo. Ct. App. 1998).

[45]   *Plaza Shoe Store,* 636 S.W.2d at 60.

[46]   *Plaza Shoe Store,* 636 S.W.2d at 58.

[47]   Doc. No. 38 at p. 2.

- 22 -

based on the result obtained.

The Court further enters summary judgment on subparagraph (g) and finds Desselle's attorney's lien, if there had been one, would have applied solely to any net amount recovered on the Westside Claim, with "recovered" meaning funds actually received.

The Court further enters summary judgment on the first subparagraph (h) and finds Desselle would not have been entitled to any payment for his services on the Westside Claim or an attorney's lien after a setoff with the City unless the value of the Westside Claim exceeded the City's claims, resulting in money actually collected from the City.

### III.  Conclusion

For the reasons set forth above, the Court GRANTS the motion to dismiss without prejudice as to subparagraphs (i) through (m) (including the second subparagraph(h)*) for lack of subject matter jurisdiction.

The Court DENIES the motion to dismiss as to subparagraphs (a) through the first subparagraph (h) and (n).

The Court GRANTS the motion for summary judgment as to subparagraphs (a) through first subparagraph (h) and (n).

IT IS SO ORDERED.

###

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS

07.10.09 Fries Travelers.wpd